## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

IVAN C. GRAVES,                           )
                                          )
      Petitioner,          )
                                          )
v.                                        )   No.:  3:15-CV-00378
                                          )       REEVES/SHIRLEY
DOUG COOK,                                )
                                          )
      Respondent.          )

## <u>MEMORANDUM OPINION</u>

Ivan C. Graves ("Petitioner"), an inmate at Bledsoe County Correctional Complex, brings this pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of his confinement pursuant to a 2008 judgment issued by the Knox County, Tennessee Criminal Court. [Doc. 1 at 1]. For the reasons set forth herein, Petitioner's Motion for reconsideration [Doc. 40] will be **DENIED**; Petitioner's Motions to amend and/or supplement his § 2254 petition [Docs. 38, 44, 45] will be **DENIED**; Petitioner's § 2254 Petition [Doc. 1] will be **DENIED**; Petitioner's Motion for leave to argue for a certificate of appealability [Doc. 46] will be **DENIED;** and this action will be **DISMISSED**.

## I.    PROCEDURAL HISTORY

### A.    State Court Proceedings

On April 9, 2008, Petitioner was convicted by a jury in Knox County Criminal Court on charges of premeditated first-degree murder and felony murder in perpetration of a kidnapping; the convictions were merged and Petitioner was given a sentence of life in prison. [Doc. 49-1 at 60]. Through counsel, Petitioner filed a direct appeal, but the Tennessee Court of Criminal Appeals ("TCCA") affirmed Petitioner's judgment on February 8, 2011. [Doc. 1-10 at 1]. On May 27, 2011,

the Tennessee Supreme Court denied Petitioner's request for permission to appeal the decision of the TCCA. [*Id*. at 2].

On September 8, 2011, Petitioner initiated his pro se petition for post-conviction relief, pursuant to Tenn. Code Ann. § 40-30-101, *et seq.*, in the Knox County Criminal Court. [Doc. 49-16 at 5]. He was thereafter appointed counsel, and the petition was twice amended [*see* Doc. 49-16 at 2-3]. After a September 26, 2013 evidentiary hearing, the amended petition was denied and that denial was subsequently affirmed by the TCCA on November 4, 2014. [Doc. 49-20]. On February 12, 2015, the Tennessee Supreme Court denied Petitioner's request for permission to appeal [Doc. 1-10].

### B.      Federal Court Proceedings

On August 21, 2015, Petitioner filed in this Court the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] [Doc. 1]. Respondent – Warden Doug Cook – thereafter filed an answer to the Petition, arguing that Petitioner's claims were all procedurally defaulted and/or without merit [Doc. 12 at 20-32].

Petitioner subsequently filed numerous motions requesting leave to amend and extensions of time to reply [Docs. 14, 15, 17, 26, 28]. On September 28, 2016, the Court entered an Order ruling on all of Petitioner's pending motions [Doc. 33]. The Court granted Petitioner's motions, ordering that any amendment and any reply to the Respondent's answer must be filed "no later than 30 days from the date of the entry of this Order" [*Id*. at 4, 5].

Petitioner did not, however, file any such amendment or reply brief within the thirty days prescribed by the Court. In fact, Petitioner did not file anything with the Court for over 120 days; then, on January 26, 2017, Petitioner filed a Motion to Amend Supplemental Pleadings, requesting

---

[1] Respondent concedes that the Petition was timely filed [Doc. 12 at 3].

leave to file an additional thirteen pages of briefing to his existing petition [Doc. 37]. The Court

denied the Motion on March 9, 2017, noting Petitioner's failure to offer any "explanation or excuse

as to why he did not timely comply" with the Court's Order and advised Petitioner that it would

"consider only the original Petition in assessing the merits of the instant action" [Doc. 39].

### C. Petitioner's Pending Procedural Motions [Docs. 38, 40, 44, 45]

Petitioner has now filed several additional procedural motions, seeking reconsideration of the

Court's orders and leave to amend and/or supplement his pleadings [Docs. 38, 39, 44, 45].[2] Petitioner

asks the Court to reconsider its March 9, 2017 ruling, stating that he placed a reply brief in the prison

mailbox on November 8, 2016, which was never received or docketed by the Court, despite the fact

that it was accepted by prison officials on November 14, 2016 [Doc. 39]. He contends that he is

therefore in compliance with the Court's September 28, 2016 Order, as he filed a reply on November

14, 2016, which was "within 30 business days [of the Court's Order] excluding weekends and

holidays" [*Id*. at 3].

Petitioner is correct that the Court never received any such reply brief. However, even if the

Court had received this brief, it would still have been untimely filed based on the facts presented by

Petitioner. Federal Rule of Civil Procedure 6(a) provides that, in computing time periods "stated in

days or a longer unit of time . . . count every day, *including* intermediate Saturdays, Sundays, and

legal holidays," *excluding only* "the day of the event that triggers the period." Fed. R. Civ. P.

6(a)(1)(A), (B) (emphasis added). Thus, even taking into account the additional three days for service

---

[2] The Court notes that, although Petitioner's February 24, 2017 motion is titled, "Motion for an Evidentiary Hearing," it is, in substance and form, a brief addressing the merits of the claims set forth by Petitioner [Doc. 38]. Thus, despite its title, the Court will construe Doc. 38 as a motion for leave to supplement and/or amend.

provided by Rule 6(d), Petitioner's amendment and/or reply brief needed to be handed over to prison officials for mailing no later than October 31, 2016.

As the Court has previously noted, Petitioner was given several opportunities to amend his petition and/or file a reply to Respondent's answer, but he repeatedly failed to do so on a timely basis in compliance with the Court's Orders. Because Petitioner did not timely comply with the Court's September 28, 2016 Order, even under the most liberal interpretation of the events described by Petitioner, the Court finds no reason to reconsider its March 9, 2017 Order denying Petitioner's untimely motion to amend and/or supplement, and it will accordingly **DENY** Petitioner's Motion for reconsideration [Doc. 40]. For the same reason, the Court will **DENY** Petitioner's subsequent Motions to amend and/or supplement [Docs. 38, 44, 45] and will consider only the original Petition in assessing the merits of this habeas action.

## II.    LEGAL STANDARD

The Court must review Petitioner's request for habeas corpus relief pursuant to the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which allows state prisoners to seek federal habeas corpus relief on the ground that they are being held in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254; *Reed v. Farley*, 512 U.S. 339, 347 (1994).

### A.    Procedural Default

A federal district court generally cannot entertain a petition for writ of habeas corpus unless the Petitioner has first exhausted all available state court remedies for each claim in his petition. 28 U.S.C. § 2254(b)(1). While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine that promotes comity between the states and federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *O'Sullivan v.*

*Boerckel*, 526 U.S. 838, 845 (1999). Consequently, as a condition precedent to seeking federal habeas corpus relief, a petitioner is required to present the factual and legal bases for his claims to every available level of the state court system. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *O'Sullivan*, 526 U.S. at 845 (holding that state prisoners "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"); *see also Lyons v. Stovall*, 188 F.3d 327, 331 (6th Cir. 1999); *Rose v. Lundy*, 455 U.S. 509, 518-20 (1982). "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (internal citations omitted). Instead, the doctrine of exhaustion requires a petitioner to present "the same claim under the same theory" to the state courts as he seeks to present in federal court. *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987); *see also Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009) ("A constitutional claim presented to the federal courts that does not rest on the same theory as was presented to the state courts is procedurally defaulted.")

Once Petitioner's federal claims have been raised in the highest state court available, the exhaustion requirement is satisfied, even if that court refused to consider the claims. *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990).[3] By contrast, when a petitioner has failed to present the grounds of his claim to the state courts and has exhausted his grounds because no state remedy remains available, his grounds are procedurally defaulted. *O'Sullivan*, 526 U.S. at 847–48. The

---

[3] In Tennessee, a Petitioner need only take his claims to the Tennessee Court of Criminal Appeals in order to fully exhaust his available state court remedies. Rule 39, Tenn. Sup. Ct. Rules; *see also Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (noting that Rule 39 clearly removed Tennessee Supreme Court review as an antecedent for habeas review).

prisoner will not be allowed to present unexhausted claims in a federal petition unless he can (1) show

cause for his default and actual prejudice to his defense at trial or on appeal, or (2) "demonstrate that

failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v.*

*Thompson*, 501 U.S. 722, 750 (1991).

### B.        Claims Adjudicated on the Merits by the State Court

For any claims that have been adjudicated on the merits by the state court, however, federal

courts must utilize a "highly deferential" standard of review.  *See, e.g.*, *Harrington v. Richter*, 562

U.S. 86, 88-89 (2011).   Under this deferential standard, this Court may not grant habeas relief to a

state prisoner unless the state court's decision on the merits of his claims "(1) resulted in a decision

that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on

an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."  28 U.S.C. § 2254(d).

"Clearly established federal law," for the purposes of § 2254(d)(1), refers to rulings of the

United States Supreme Court in place at the time of "the last state-court adjudication on the merits."

*Greene v. Fisher*, 565 U.S. 34, 40-41 (2011); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (defining

clearly established federal law as "the governing legal principle or principles set forth by the Supreme

Court at the time the state court renders its decision").  A decision is "contrary to" clearly established

federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court]

on a question of law or if the state court decides a case differently than [the Supreme Court] on a set

of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A state-court

decision unreasonably applies clearly established federal law if "the state court identifies the correct

governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The standards set forth in the AEDPA's are "intentionally difficult to meet." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)); *see also Harrington*, 562 U.S. at 102 ("If [§ 2254(d)] is difficult to meet, that is because it was meant to be."). Ultimately, however, the AEDPA's highly deferential standard requires this Court to give the rulings of the state courts "the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

## III.    PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254

In his instant petition, Petitioner asserts numerous grounds for habeas corpus relief pursuant to § 2254, arising from his trial, appellate, and post-conviction proceedings in state court [Doc. 1]. Respondent opposes each of Petitioner's grounds for relief. The Court will address the merits of each claim, applying the above standards.

### A.    Ground 5

In Ground 5, Petitioner raises a claim of prosecutorial misconduct [Doc. 1 at 12]. Petitioner maintains that, although the prosecutor promised the trial court at a pretrial hearing that she would introduce the telephone recordings "through the keeper of the records from the sheriff's department," she instead used Buddy Burkhart – a technical support supervisor for the county – to introduce this evidence at trial [*Id.*; *see* Doc. 1-12 at 2]. According to Petitioner, Burkhart "testified that the prosecutor asked him to deviate from his ordinary course of duties" [*Id.*]. Respondent contends that this claim is procedurally defaulted because it was not presented to the state court for review [Doc. 12 at 28-29].

Although the issue of the admissibility of the telephone recordings was raised numerous times before the state court [*see* Doc. 49-11], Petitioner did not expressly raise a claim for prosecutorial misconduct related to the State's use of the testimony of Buddy Burkhart to introduce the recordings at trial.[4]    As the Court previously noted, the doctrine of exhaustion requires Petitioner to have presented to the state court "the same claim under the same theory" as the claim for which he seeks relief in federal court.  *See Pillette*, 824 F.2d at 497.  Thus, it is not enough that Petitioner presented to the state courts claims relating to the admissibility of the telephone recordings.  Because Petitioner did not present this specific claim and theory to the state courts – that is, a claim of prosecutorial misconduct related to the state's use of Burkhart's testimony to introduce the recordings – this claim is procedurally defaulted.

Accordingly, Petitioner cannot present this claim in his § 2254 unless (1) he can show cause for his default and actual prejudice to his defense at trial or on appeal, or (2) he can "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *See Coleman*, 501 U.S. at 750.  Petitioner has offered no cause for his default, and the Court can discern no such cause from the record before it.  Nor has Petitioner identified any actual prejudice to his defense at trial based on the State's use of the testimony of Burkhart, rather than a "records custodian," to introduce the recordings at trial.  Further, the Court finds that no fundamental miscarriage of justice will result

---

[4] In his direct appeal, Petitioner argued that the admission of the phone calls violated Tennessee's Wiretapping and Electronic Surveillance Act, and in this argument, contended that "the interception of Mr. Graves' phone calls in prison was outside the ordinary course of Mr. Burkhart's duties" [Doc. 49-11 at 22, 43-47].  Further, in his initial pro se post-conviction motion, Petitioner did expressly raise this claim of prosecutorial misconduct [Doc. 49-16 at 23-24]; however, in his amended petition for post-conviction relief – filed by counsel – Petitioner abandoned this ground for relief in favor of claims of ineffective assistance of counsel and denial of due process [*Id*. at 92-96].  Thus, although this claim appeared, at one point, on the record before the state court, it was not fairly presented to the state courts on direct appeal, let alone to the highest available court.

from the Court's failure to consider this claim.[5]  Thus, the Court finds no basis upon which to conclude

that Petitioner should be permitted to proceed on this procedurally defaulted claim, and this ground

for relief must be **DENIED**.

**B.      Ground 2**

In his second ground for relief, Petitioner raises claims pursuant to the Fifth and Fourteenth

Amendments related to the admission of abridged transcripts of recordings of Petitioner's jail

telephone calls into evidence at his trial.  Petitioner argues that the trial court committed plain error

in deciding to admit the abridged transcripts into evidence and in failing to instruct the jury that the

transcripts themselves were not to be considered as evidence [Doc. 1 at 6; Doc. 1-3 at 1; *see* Doc. 1-

9 at 2].[6]  Respondent maintains that this claim is procedurally defaulted, as Petitioner challenged these

evidentiary rulings only pursuant to Tennessee law on direct appeal, and thus raised his federal claims

for the first time in this Petition [Doc. 12 at 22].

---

[5] The state court determined that the recordings were lawfully intercepted, that Petitioner
consented to the interception, that state and federal law do not prohibit the state from using the
recordings in court, and moreover, that no plain error could be found given the overall strength of the
evidence against Petitioner at trial.  *See State v. Graves*, No. E2009-00009-CCA-R3-CD, 2011 WL
398024, at *16-19 (Tenn. Crim. App. Feb. 8, 2011) (collecting state and federal cases for the principle
that plain error "must be of such a great magnitude that it probably changed the outcome of the trial").
Similar to the plain error standard, prosecutorial misconduct constitutes a due process violation only
if it "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process."
*Parker v. Matthews*, 567 U.S. 37, 45 (2012) (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).
The Court finds no error with the state court's plain error determination and finds that the issue of
whether Burkhart was a proper witness to present the recordings at trial – even if technical
prosecutorial error – did not render the trial fundamentally unfair so as to amount to a violation of
federal due process rights.

[6] Petitioner also argues in Ground 2 that counsel was ineffective in failing to object to the
admission of the transcripts into evidence.  The Court will address this argument in connection with
Ground 4, wherein Petitioner raises his other claims of ineffective assistance of counsel.

Although Petitioner challenged the interception and recording of his prison telephone calls pursuant to federal law, he challenged the admissibility of the transcripts of those recordings only pursuant to Tennessee law [Doc. 49-1 at 61-63; Doc. 49-14]. As the Court previously discussed, the doctrine of exhaustion requires Petitioner to have presented to the state court "the same claim under the same theory" as the claim for which he seeks relief in federal court. *See Pillette*, 824 F.2d at 497. Thus, it is not enough that Petitioner presented to the state courts claims relating to the admissibility of the telephone recordings pursuant to the Tennessee Rules of Evidence. Because Petitioner did not present this specific claim and theory to the state courts – that is, that the admission of the transcripts of the telephone recordings violated his Fifth and Fourteenth Amendment rights under the U.S. Constitution – this claim is procedurally defaulted.

Accordingly, Petitioner cannot present this claim in his § 2254 unless (1) he can show cause for his default and actual prejudice to his defense at trial or on appeal, or (2) he can "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *See Coleman*, 501 U.S. at 750. Petitioner has offered no cause for his default, and the Court can discern no such cause from the record before it. Nor has Petitioner identified any actual prejudice to his defense at trial based on trial court's decision to allow the abridged transcripts of the telephone recordings to be entered into evidence at trial or its failure to instruct the jury that the audio recordings – not the transcripts – were the evidence to be considered. Further, the Court finds that no fundamental miscarriage of justice will result from the Court's failure to consider this claim.[7] Thus, the Court finds

---

[7] The state court noted that Petitioner "never raised any objection to the transcripts' accuracy or their admissibility" at trial; nonetheless, it analyzed Petitioner's plain error argument and determined that no plain error could be found given the overall strength of the evidence against Petitioner at trial. *See State v. Graves*, 2011 WL 398024, at *18-19. As noted previously, the Court finds no error with the state court's plain error determination, and it further finds that the issue of whether the trial court erred in permitting the transcripts to be presented to the jury or in failing to

no basis upon which to conclude that Petitioner should be permitted to proceed on this procedurally defaulted claim, and this ground for relief must be **DENIED**.

## C. Ground 3

In his third ground for relief, Petitioner argues that the evidence presented at trial was insufficient to support the jury's finding that Petitioner was guilty of first-degree murder [Doc. 1 at 8]. Respondent contends that the state court accurately summarized the evidence presented at trial, correctly applied the relevant legal standards, and concluded that there was more than enough evidence to support his conviction for first-degree murder, and maintains that Petitioner has failed to demonstrate that these factual or legal determinations were unreasonable or contrary to federal law [Doc. 12 at 27-28].

Petitioner presented this claim on direct appeal, and the TCCA analyzed it as follows:

### A. Sufficiency of the Evidence: Premeditation

The appellant argues that the evidence is insufficient to support his first degree premeditated murder conviction because the evidence failed to show he premeditated killing the victim. The State contends that the evidence is sufficient. We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also* Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. *See State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. *See State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. *See id.* Because a jury conviction removes the

give a specific cautionary instruction to the jury regarding the evidentiary nature and/or weight of those transcripts did not render the trial fundamentally unfair.

presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. *See State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982).

First degree murder is the premeditated and intentional killing of another person. Tenn. Code Ann. § 39–13–202(a)(1). A premeditated killing is one "done after the exercise of reflection and judgment." Tenn. Code Ann. § 39–13–202(d). The element of premeditation is a question of fact for the jury. *State v. Davidson,* 121 S.W.3d 600, 614 (Tenn. 2003). Although the jury may not engage in speculation, it may infer premeditation from the manner and circumstances surrounding the killing. *Bland,* 958 S.W.2d at 660. In *State v. Nichols,* 24 S.W.3d 297, 302 (Tenn. 2000), our supreme court delineated the following circumstances from which a jury may infer premeditation:

> Declarations by the defendant of an intent to kill, evidence of procurement of a weapon, the use of a deadly weapon upon an unarmed victim, the particular cruelty of the killing, infliction of multiple wounds, preparation before the killing for concealment of the crime, destruction or secretion of evidence of the murder, and calmness immediately after the killing.

The jury may also infer premeditation from the establishment of a motive for the killing and the use of multiple weapons in succession. *State v. Leach,* 148 S.W.3d 42, 54 (Tenn. 2004).

The appellant acknowledges that the unarmed victim was shot multiple times. However, he argues that the record is devoid of any evidence that he made declarations of an intent to kill, prepared before the killing to conceal the crime, or used multiple weapons in succession. In addition, he contends that the evidence does not show he procured a weapon for the purpose of killing the victim or that the killing was particularly cruel. Regarding motive, he argues that the evidence shows he only wanted to recover his property from the victim and that Falls' testimony about his "heavy handed" tactics do not establish revenge for the burglary. Regarding concealment of the crime, the appellant contends that nothing shows who disposed of the gun or how, that forensic evidence does not connect him to moving the victim's body, that Jay Miller's testimony about seeing him on Sunrise Road on December 29 is "entirely too speculative and weak," and that someone's cleaning the Camry's backseat is not enough evidence alone to support a finding of premeditation. Finally, regarding calmness immediately after the killing, he argues that the evidence indicates he and Thomas panicked and quickly left the scene after the shooting. He also notes that he testified at trial he was in shock.

Taken in the light most favorable to the State, the evidence is more than sufficient to show premeditation. The evidence established that the appellant thought the victim

had burglarized his apartment and had taken eight hundred dollars and some tools. By the appellant's own admission, he was "mad." The appellant allegedly believed the victim was dangerous. However, instead of contacting the police, the appellant got a gun and went to the motel to confront the victim. He then used Falls to get the victim to open the door, forced his way into the victim's motel room, and beat the victim with the weapon. The appellant did not find any of his property in the victim's room. Although he claimed he only wanted the victim to return his property, he then kidnapped the unarmed victim and continued beating the victim in the car. The medical examiner's testimony established that the appellant beat the victim severely, causing skull fractures, hemorrhaging under the scalp, and brain contusions. When the victim escaped from the car and ran onto the porch at 8508 Sunrise Road, the appellant followed and shot him at least six times. Thomas testified that the appellant walked, not ran, back to the car, and that they drove away from the scene. The appellant claimed he was in shock after the shooting, yet he was thinking rationally enough to want to return to the house and move the body off the homeowner's porch so she would not find it. Thomas helped the appellant carry the victim behind the abandoned house across the street, and the appellant avoided getting the victim's blood on his clothes because he carried the victim's lower body. He and Thomas then drove to a store where the appellant bought cleaning supplies and cleaned the victim's blood off the backseat.

The testimony further established that when Thomas returned to the abandoned house with the police the next day, he was surprised the victim's body was not where he and the appellant had left it. Jay Miller remembered seeing the appellant in the area on December 29 because that was the day the police found the victim's body. Based upon the evidence, a rational jury could have determined that the appellant later returned to 8515 Sunrise Road, wrapped the victim in a carpet, and moved the body into the heavily wooded area behind the house. Evidence of procurement of a weapon, the use of a deadly weapon upon an unarmed victim, the particular cruelty of this killing, the infliction of multiple wounds, the destruction and secretion of evidence of the murder, and the appellant's calmness immediately after the killing support the jury's conclusion that the appellant premeditated killing the victim.

### B. Sufficiency of the Evidence: Physical Facts Rule

The appellant contends that the evidence is insufficient to support the convictions because Robert Thomas' testimony must be disregarded due to the physical facts rule. Specifically, he argues that Thomas' description of the shooting is entirely irreconcilable with the physical evidence because Thomas testified that the victim was facing the appellant the entire time of the shooting and that the appellant shot the victim from twenty feet away. However, the victim's autopsy showed four gunshots entered the victim's back, and the police found the spent shell casings at a distance much less than twenty feet. The State argues that the evidence is sufficient because the physical facts rule is not implicated under these circumstances. We agree with the State.

Our supreme court has described the physical facts rule as follows:

> the accepted proposition that in cases where the testimony of a witness is entirely irreconcilable with the physical evidence, the testimony can be disregarded. That is, where the testimony of a witness cannot possibly be true, is inherently unbelievable, or is opposed to natural laws, courts can declare the testimony incredible as a matter of law and decline to consider it.... [W]here undisputed physical facts are entirely inconsistent with and opposed to testimony the physical facts must control. No jury can be allowed to return a verdict based upon oral testimony which is flatly opposed to physical facts, the existence of which is incontrovertibly established. Courts have made it clear that in order for testimony to be considered incredible as a matter of law, it must be unbelievable on its face, i.e., testimony as to facts or events that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature. Thus, for example, if a witness was to testify that he saw the sun set in the east, the court would be free to declare such testimony incredible as a matter of law and disregard it.

*State v. Allen,* 259 S.W.3d 671, 679–80 (Tenn. 2008) (quotation marks, citations, and ellipses omitted). The rule applies to criminal cases. *See State v. Hornsby,* 858 S.W.2d 892, 895 (Tenn. 1993). However, it is available "only where the physical facts at issue are well-established and universally recognized physical laws." *Allen,* 259 S.W.3d at 680 (quotation marks omitted). It "may not be invoked where its application depends upon assumptions or calculations based upon estimates as to speed, distance, time, and other such uncertain matters in the movement of objects." *Id.* (quotation marks and brackets omitted); *see also State v. Israel Dean Bolinger,* No. E2008–01576–CCA–R3–CD, 2010 Tenn. Crim. App. LEXIS 485, at 6–7 (Tenn. Crim. App. at Knoxville, June 15, 2010). Nor should it be used to disregard testimony that is capable of different interpretations because the jury is responsible for weighing the evidence. *See Allen,* 259 S.W.3d at 681. Thus, our supreme court has instructed that the rule be used only "sparingly." *Hornsby,* 858 S.W.2d at 895.

Turning to the instant case, we initially note that the appellant did not ask the trial court to apply the physical facts rule and instruct the jury to disregard any part of Thomas' testimony. *See* Tenn. R. App. P. 36(a). In any event, we conclude there is no merit to the appellant's claim. First, because the physical facts rule does not apply to estimates of measurement or distance, it cannot be used to disregard Thomas' estimate that the appellant shot the victim from twenty feet away. Dr. Mileusnic–Polchan testified that none of the gunshot wounds were close-range wounds, meaning that the gun muzzle was at least three feet away from the victim. Her testimony was consistent with Officer Finch's testimony that the distance from the top of the porch to the first shell casing was four feet, two inches.

Regarding Thomas' testimony and the physical evidence presented in the autopsy, Thomas testified on direct examination that the victim ran onto the porch and started knocking on the door and that the appellant shot the victim in the "[u]pper back." On cross-examination, Thomas testified as follows:

> Q All right. So when Kendall Porter was shot, was he facing Mr. Graves or was he—had his back turned to him?
>
> A Facing Mr. Graves.
>
> Q He was facing him?
>
> A He had to, to get—to get shot up here.
>
> Q How do you know he was shot up here?
>
> A I assumed he was.
>
> Q Pardon me?
>
> A I assumed he was.
>
> Q But how do you know?
>
> A I don't.
>
> Q But you remember telling the policemen two days after—a day after this happened that he was facing—Mr. Porter, the victim, was facing Mr. Graves, right?
>
> A Right.
>
> Q I mean, that's—that's what you told them, and that's what you're telling us now, right?
>
> A Right.
>
> Q And that's the truth?
>
> A Right.
>
> Q So he's facing him as all the shots were ringing out, five, six shots, right?
>
> A Right.

Thomas's direct testimony comports with the autopsy results, which showed the victim was shot four times in the upper back. On cross-examination, Thomas changed his testimony, claiming that the victim was facing the appellant the entire time of the shooting. However, Thomas' cross-examination testimony was equivocal, stating at first that he "assumed" the victim had been facing the appellant "to get shot up here." As noted by the trial court at the appellant's motion for new trial hearing, "the fact that a witness testifies and that testimony ends up being inconsistent with other testimony raised at trial, even if it's—even if it's scientific testimony, does not make it inadmissable testimony." The evaluation of the evidence rests upon "consideration of the comparative credibility of the witnesses." *Id.* at 896 (quotation marks and citation omitted). In this case, the jury could have concluded that Thomas' cross-examination testimony was not credible or that he simply was mistaken. The evidence is sufficient to support the convictions.

*State v. Graves*, 2011 WL 398024, at *10-13.

The United States Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979), provides the controlling rule for resolving claims of insufficient evidence. *See Gall v. Parker*, 231 F.3d 265, 287-88 (6th Cir. 2000) (identifying *Jackson* as the governing precedent for claims of insufficient evidence), *superseded on other grounds as recognized by Parker v. Matthews*, 567 U.S. 37 (2012). In *Jackson*, the Supreme Court held that the evidence is sufficient to sustain a conviction if any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt when viewing the evidence in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 319.

A habeas court reviewing a challenge to the sufficiency of the evidence must apply two levels of deference. *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). First, under *Jackson*, deference is owed to the fact finder's verdict, "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citing *Jackson*, 443 U.S. at 324 n.16); *see also Cavazos v. Smith*, 132 S. Ct. 2, 6 (2011) ("[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the

prosecution, and must defer to that resolution.'") (quoting *Jackson*, 443 U.S. at 326). Additional deference is owed to the state court's consideration of the trier-of-fact's verdict pursuant to the highly deferential standards of the AEDPA. *Smith*, 132 S. Ct. at 6 (noting the double deference owed "to state court decisions required by § 2254(d)" and "to the state court's already deferential review."). Hence, a petitioner bringing a claim of insufficient evidence "bears a heavy burden." *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

In this case, the state court set forth the appropriate federal standard from *Jackson* applicable to Petitioner's arguments regarding the sufficiency of the evidence and accurately summarized the evidence presented at trial. The Courts finds no error in the state court's application of *Jackson* to the facts from Petitioner's trial or in its ultimate conclusion that the evidence, viewed in the light most favorable to the government, supported the jury's verdict. Petitioner has failed to set forth any valid reason that the Court should decline to give deference to either the state court's resolution of this claim for relief or the jury's verdict itself. Because the Court concludes that the state court's resolution of Petitioner's claim of insufficiency of the evidence was neither contrary to or an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of facts based on the evidence, this claim for relief pursuant to § 2254 must be **DENIED**.

### D.      Ground 4

Petitioner also raises numerous arguments regarding ineffective assistance of counsel. Ineffective assistance of counsel is a recognized constitutional violation that, when adequately shown, warrants relief under § 2255. The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, (1984), governs claims of ineffective assistance of counsel raised pursuant to 28 U.S.C. § 2255. *See Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). To establish ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient

performance prejudiced the defense so as to render the proceedings unfair and the result unreliable. *Strickland,* 466 U.S. at 687.

In assessing counsel's performance, a court must presume that counsel's questioned actions might have been sound strategic decisions and must evaluate the alleged errors or omissions from counsel's perspective at the time the conduct occurred and under the circumstances of the particular case. *Id.* at 689; *see also Vasquez v. Jones*, 496 F.3d 564, 578 (6th Cir. 2007) ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]") (quoting *Strickland*, 466 U.S. at 690). Only when the challenged actions are "outside the range of professionally competent assistance" will counsel's performance be considered constitutionally deficient. *Strickland*, 466 U.S. at 690. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). On balance, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceedings] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

When a petitioner raises an ineffective assistance of counsel claim in his § 2254 petition, the Court must review the state court's ruling on that claim under the highly deferential standard of the AEDPA. Thus, in order to succeed on a federal claim of ineffective assistance of counsel, a habeas petitioner must demonstrate that the state court's ruling on his ineffective assistance of counsel claim was an unreasonable application of *Strickland*. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). "Surmounting *Strickland*'s high bar is never an easy task," and "[e]stablishing that a state court's

application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 88 (citing *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

### 1.    Ineffective Assistance of Trial Counsel

Petitioner first argues that trial counsel was ineffective in failing to object to the admission of the transcripts into evidence or the accuracy of those transcripts and in failing to object to the testimony of Jill Falls, a government witness who testified about "various bad acts that petitioner had allegedly inflicted upon her prior to trial" [Doc. 1 at 10; Doc. 1-3].   Respondent maintains that the record supported the state court's findings of fact and that the state court reasonably applied the *Strickland* standard in concluding that Petitioner was not entitled to relief on his claims of ineffective assistance of trial counsel [Doc. 12 at 29-32].   Specifically, Respondent points to the state court's ruling that Petitioner failed to present any evidence to contradict counsel's testimony regarding his tactical decisions at trial and, in any event, failed to demonstrate any resulting prejudice from the alleged errors [*Id*. at 30-32].

Petitioner raised these grounds of ineffective assistance of counsel in his post-conviction proceedings in state court, but the post-conviction court denied relief as to both alleged claims of error. [*See* Doc. 49-16 at 92-96].   On appeal, the TCCA properly set forth the legal standards applicable to ineffective assistance of counsel claims and analyzed Petitioner's claims as follows:

> Petitioner argues that trial counsel was ineffective because Petitioner did not see the transcripts of the jail phone conversations admitted at trial and because Petitioner could not recall if he was able to understand the audio recordings when they were played at trial.  Petitioner testified at the post-conviction hearing that he was not bragging about being a good shot but rather stating that he did not want the victim to get shot.  In his brief, Petitioner concedes that "the distinction may not be critical in terms of the Petitioner's culpability for the kidnapping and therefore culpability under a felony murder theory."  Petitioner contends, however, that the alleged discrepancy "may have affected the admissibility of the transcripts" at trial.  The post-conviction court clearly accredited trial counsel's testimony regarding the recorded jail phone calls, and we conclude that the evidence does not preponderate against the post-conviction court's

finding. Trial counsel testified that he discussed the recordings with Petitioner, and Petitioner testified at trial in an effort to explain the statement. Petitioner has failed to show that trial counsel's performance was deficient or that he was prejudiced by counsel's alleged deficiency.

Petitioner also argues that trial counsel was ineffective because counsel did not object to Ms. Falls' testimony at trial regarding prior bad acts of Petitioner against Ms. Falls. Trial counsel testified at the post-conviction hearing that he filed a motion to exclude Ms. Falls' testimony of Petitioner's prior bad acts, and the trial court ruled that the testimony would not be allowed. However, trial counsel testified that he withdrew his objection for tactical reasons. Trial counsel cross-examined Ms. Falls on the inconsistencies in her testimony and her statement to police. The evidence does not preponderate against the post-conviction court's finding that trial counsel's performance was not deficient, but rather a tactical decision. Petitioner cannot attack "a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994) (citing *State v. Martin*, 627 S.W.2d 139, 142 (Tenn. Crim. App. 1981)). In any event, Petitioner did not prove that trial counsel's failure to object to Ms. Falls' testimony was prejudicial to his defense. The other evidence offered at trial was overwhelming.

*Graves v. State*, No. E2013-024450-CCA-R3-PC, 2014 WL 5589531, at *3-4 (Tenn. Crim. App. Nov. 4, 2014).

To the extent that Petitioner seeks to challenge the state court's findings of fact – specifically, that the state court erred in crediting counsel's testimony – the Court notes that it is bound to accept the state court's findings of fact as true unless Petitioner presents "clear and convincing evidence" to the contrary. *See* 28 U.S.C. § 2254(e)(1) (providing that "a determination of a factual issue by a State court shall be presumed to be correct" unless the petitioner rebuts that presumption with clear and convincing evidence); *Seymour v. Walker*, 224 F.3d 542, 551-52 (6th Cir. 2000). Indeed, the United States Court of Appeals for the Sixth Circuit has expressly held that "in the context of a *Strickland* evidentiary hearing, it is for the [state court] judge to evaluate the credibility of the criminal defendant and the former defense counsel . . . , and such findings are entitled to the Section 2254(e)(1) presumption[.]" *Shimel v. Warren*, 838 F.3d 685, 697 (6th Cir. 2016) (citing *Ramonez v. Berghuis*, 490 F.3d 482, 490 (6th Cir. 2007)).

The state court, after hearing all of the testimony and having had the opportunity to assess the credibility of the witnesses, credited the testimony of counsel over that of Petitioner. Petitioner has submitted no evidence – let alone clear and convincing evidence – that would allow the Court to disregard the presumption of correctness afforded to the district court's credibility determination and accompanying findings of fact that counsel discussed the transcripts and phone recordings with Petitioner and that both of the alleged deficiencies identified by Petitioner were actually tactical trial decisions. Thus, the Court cannot find, based on the record before it, that the state court made "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(2). The Court will thus accept the state court's finding that counsel's testimony was credible and will defer to the court's findings of fact.

Remaining is the Court's obligation to determine whether the state court's finding that trial counsel was not constitutionally ineffective is contrary to, or an unreasonable application of, the *Strickland* standard. The Court finds that the state court correctly set forth the governing legal standards for assessing this claim of *Strickland* error and further finds no error with the state court's application of those legal standards. As mentioned above, the state court found credible counsel's testimony that these decisions were made strategically for the purposes of Petitioner's defense; Petitioner has not demonstrated that these tactical decisions were outside the scope of professionally competent assistance. Moreover, the Court notes that Petitioner failed to identify any specific prejudice as a result of either of the alleged errors by trial counsel; indeed, he conceded that the alleged failure regarding the transcripts was not ultimately "critical" to his culpability and conviction. In light of the overwhelming weight of the evidence against Petitioner at trial, the Court finds no error in the state court's determination that there is no reasonable probability that the outcome of Petitioner's trial would have been more favorable absent these decisions by counsel. Accordingly, the Court finds that

Petitioner has not demonstrated entitlement to relief pursuant to § 2254 as to his claims of ineffective assistance of trial counsel.

### 2. Ineffective Assistance of Post-Conviction Counsel

Petitioner next argues that post-conviction counsel was ineffective in filing an appellate brief that failed to raise issues that Petitioner specifically requested counsel include in his appeal of the denial of his motion for post-conviction relief [Doc. 1-3]. He argues that his post-conviction counsel failed to adequately investigate the claim of structural error with respect to Judge Baumgartner's alleged substance abuse, despite Petitioner's repeated requests that he do so [Doc. 1-4]. Respondent argues that this claim is without merit as ineffective assistance of post-conviction counsel is not a cognizable ground for federal habeas relief [Doc. 12 at 28].

Respondent correctly notes that, because there is no constitutional right to an attorney in state post-conviction proceedings, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman v. Thompson*, 501 U.S. 722, 754 (1991). Accordingly, Petitioner has not demonstrated entitlement to relief as to this claim, and it must be **DENIED**.

### E. Ground 1

In his first ground for relief, Petitioner raises of claim of structural error related to personal and professional misconduct by trial judge Richard Baumgartner [Doc. 1 at 5-6; Doc. 1-4 at 1]. Petitioner argues that, due to Baumgartner's addiction to alcohol and prescription drugs, a reasonable factfinder could conclude that his trial judge was severely impaired in execution of his duties and that his substance abuse "resulted in him being bias[ed] against the petitioner at his trial." [Doc. 1-4 at 1; Doc. 1-9]. He argues that the state court deprived him of a full and fair hearing on this issue by depriving him of access to the investigative file on Baumgartner created by the Tennessee Bureau of

Investigations [Doc. 1-4 at 2-4]. He argues that he is entitled to an evidentiary hearing on the merits of this claim due to ineffective corrective process in the state court [*Id*. at 4-5]. Respondent maintains that this claim is procedurally defaulted, as Petitioner failed to raise this issue in his appeal of the denial of his petition for post-conviction relief in state court [Doc. 12 at 20-21].

Petitioner first raised a claim of structural error related to the alleged addictive and criminal behaviors of his trial judge in his amended motion for post-conviction relief in state court [Doc. 49-16 at 40-45]. Specifically, Petitioner alleged that his right to a fair and impartial trial was violated because, before and during his trial, trial judge Richard Baumgartner was addicted to prescription drugs and alcohol, "suffered severe and disabling medical issues and was in ill health," and was "engaging in illegal activity" [*Id*. at 42]. Petitioner claimed that, during the trial, Baumgartner "would often doze off, and seem not to able to speak clearly or understand counsel questions, objections, or witnesses testimony," and that he "displayed erratic behavior, like halting the trial numerous times for no apparent reason and then taking an extremely long time for recesses" [*Id*. at 43]. Petitioner also filed a motion requesting that the court allow him access to the file on Baumgartner compiled by the Tennessee Bureau of Investigations [*Id*. at 66-68].

At the September 26, 2013 evidentiary hearing, the court first addressed Petitioner's request for the TBI file on Baumgartner:

> [W]ith regard to the first issue, and that involves the access to the TBI report, I think that issue is – is not relevant to these proceedings here. It's incumbent upon Mr. Graves to show something that Judge Baumgartner did in his specific trial that somehow prejudiced him.

> The conduct of Judge Baumgartner throughout the entire course of his—those years that this court has found that he was under the influence of various intoxicants and that various acts he committed, in this Court's mind, raised an issue of structural error. Those—this Court has already found, and will continue to find, that those acts are undisputed. And I can rely upon those facts from other hearings that I have conducted.

So it's not a question of what these witnesses will come in and say. I've already heard what these witnesses have said. It's incumbent upon him to show that during his trial, something that Judge Baumgartner did, because of his impairment and because of his conduct, prejudiced him in the outcome of his trial. So what these people—what these witnesses might say, they've already given their statements at the—to the TBI report, are basically irrelevant. And the Court rules that he is not entitled to the TBI report. Now if he can come forward today and show some specific incident that happened in this trial that Judge Baumgartner did as a result of his impairment or the result of his conduct that occurred and would have had an outcome on the trial, he's free to do that. But I don't know whether he'd be able to do that. He has his counsel here that he can question that, but with regard to the—his availability to the report, the Court denies that.

[Doc. 49-17 at 16-17]. Petitioner then spoke to the Court himself, conceding that his prior post-conviction attorney had been granted access to the file, but maintaining that he himself had never gotten a chance to review it [*Id*. at 17-18].

Bruce Poston, Petitioner's trial attorney, testified at the hearing that he had tried numerous murder trials before Baumgartner during the year "when he wasn't at his best, when he going down hill," and that, in other cases, he had worked out certain issues with opposing counsel when both attorneys "weren't too comfortable with [Judge Baumgartner] making the decision" [Doc. 49-17 at 85]. However, he testified that "[i]n Mr. Graves' case, [Baumgartner] was at the top of his game. His rulings were correct. . . . He was animated. He was on top of it. He was the Judge Baumgartner that we had known." [*Id*. at 85-86]. He testified that Baumgartner "ruled more in [Petitioner's] favor than not" throughout the course of the trial [*Id*. at 78]. The court ultimately found that the petition should be dismissed, as Petitioner failed to prove any claim for relief by clear and convincing evidence [*Id*. at 97-98].

Although Petitioner's post-conviction counsel appealed the court's denial of the petition, he did not appeal the court's decisions with respect to Petitioner's access to the TBI file or the claim of

structural error; instead, the appeal of the post-conviction proceeding focused solely on two grounds of ineffective assistance of counsel [Docs. 49-18 through 49-20].

Thus, Respondent is correct that Petitioner failed to fairly present this claim to the highest available level of the state court system, and as such, the claim is procedurally defaulted. Accordingly, Petitioner cannot present this claim in his § 2254 unless (1) he can show cause for his default and actual prejudice to his defense at trial or on appeal, or (2) he can "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *See Coleman*, 501 U.S. at 750.

As noted above, Petitioner has argued that post-conviction counsel was ineffective in failing to raise the issues regarding Judge Baumgartner in his appeal of the denial of his motion for post-conviction relief, despite Petitioner's express requests that he do so [Docs. 1-3, 1-4]. The Court notes that a limited exception allows habeas petitioners to use ineffective assistance of post-conviction counsel as "cause" for default. *See Martinez v. Ryan*, 566 U.S. 1 (2012). Specifically, the *Martinez* exception may apply when a petitioner shows that:

> (1) he has a substantial claim of [ineffective assistance of trial counsel]; (2) counsel on initial state collateral review was nonexistent or ineffective; (3) the state collateral review proceeding was the initial review proceeding as to the [ineffective assistance of trial counsel] claim alleged; and (4) the state *requires* that the [ineffective assistance of trial counsel] claim be raised for the first time during the state collateral proceeding.

*Atkins v. Holloway*, 792 F.3d 654, 658 (6th Cir. 2015) (citing *Trevino v. Thaler*, 133 S.Ct. 1911 (2013)). The United States Court of Appeals for the Sixth Circuit has clarified that the *Martinez* exception does not permit a habeas petitioner to use ineffective assistance of post-conviction *appellate* counsel as cause for default. *See, e.g.*, *Williams v. Mitchell*, 792 F.3d 606, 615 (6th Cir. 2015) (holding that post-conviction counsel's failure to raise claim at appellate stage of post-conviction proceeding in state court cannot constitute cause to overcome default, as the *Martinez* exception "does not extend to attorney errors in any proceedings beyond the first occasion the State allows a prisoner to raise a

claim"); *Atkins*, 792 F.3d at 660-61 ("[A] claim of ineffective assistance of state *appellate* collateral counsel does not provide cause to excuse the procedural default of the claims Atkins raised below during initial collateral proceeding[.]") (emphasis original); *Wallace v. Sexton*, 570 F. App'x 443, 452-53 (6th Cir. 2014) ("Ineffective assistance of counsel at [the post-conviction appellate] stage of the case cannot constitute cause to excuse the procedural default because it is not an *initial-review* collateral proceeding.") (emphasis original).

To the extent that Petitioner has asserted ineffective assistance of post-conviction appellate counsel as a basis for cause to overcome his default of the claim of structural error, the Court finds that the *Martinez* exception is inapplicable to Petitioner's case. First, Petitioner's procedurally defaulted claim is not one for ineffective assistance of trial counsel, but rather, is one of structural error based on alleged misconduct by the judge presiding over Petitioner's criminal trial. Further, Petitioner's post-conviction counsel did raise this claim of structural error at the initial state post-conviction proceeding, but then he declined to reassert the claim at the post-conviction appellate stage. Because the *Martinez* exception requires that the procedurally defaulted claim be one for ineffective assistance of trial counsel and because ineffective assistance of post-conviction appellate counsel cannot be cause for the default under the exception, the Court concludes that the *Martinez* exception cannot apply in this case, and this argument cannot demonstrate "cause" for Petitioner's default.[8]

_____

[8] The Court nonetheless notes that, even if the *Martinez* exception were to be expanded to allow ineffective assistance of post-conviction appellate counsel to constitute cause for default, Petitioner would still be required to show that post-conviction counsel was ineffective in order to warrant application of the *Martinez* exception. "Claims of ineffective assistance of appellate counsel are subject to the *Strickland* test, which requires a defendant to show both deficient representation and prejudice." *Evans v. Hudson*, 575 F.3d 560, 564 (6th Cir. 2009). When considering the *Strickland* standard in conjunction with the deferential standard of § 2254(d), the question in reviewing the state court's ruling "is whether there is any reasonable argument that [appellate] counsel satisfied *Strickland*'s deferential standard." *See Harrington*, 562 U.S. at 88. Appellate counsel is not required "to raise every possible issue in order to render constitutionally effective assistance." *Hutton v.*

Petitioner has identified no other grounds for cause for his default; accordingly, he cannot overcome

his default as to this claim unless he can "demonstrate that failure to consider [this] claim[] will result

in a fundamental miscarriage of justice." *See Coleman*, 501 U.S. at 750.

After a review of Petitioner's arguments and the record in this case, the Court concludes that

Petitioner has failed to make such a showing. Petitioner's underlying claim is one of "structural

_____

*Mitchell*, 839 F.3d 486, 501 (6th Cir. 2016) (citing *Jones v. Barnes*, 463 U.S. 745, 750-53 (1983)); *see also Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) ("[T]he *Strickland* analysis does not require an attorney to raise every non-frivolous issue on appeal," nor does it require counsel to "raise an issue that lacks merit.") (internal quotation marks and citation omitted); *Smith*, 528 U.S. at 288 ("[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather, may select from among them in order to maximize the likelihood of success on appeal."). When evaluating the issue of ineffective assistance of appellate counsel for prejudice, the Court must determine whether there is a reasonable probability – that is, "a probability sufficient to undermine confidence in the outcome" – that, but for his counsel's failings, the defendant would have prevailed on his appeal. *Evans*, 575 F.3d at 564-65 (citing *Burton v. Renico,* 391 F.3d 764, 773 (6th Cir. 2004); *Maples v. Stegall,* 340 F.3d 433, 437 (6th Cir. 2003)).

In this case, Counsel raised two claims of ineffective assistance of trial counsel at the post-conviction appellate stage. Counsel was not required to raise every non-frivolous claim on appeal, and his decision to prioritize claims of ineffective assistance of counsel in order to maximize success on appeal cannot be deemed ineffective unless there is a reasonable probability that the issues of structural error and Petitioner's personal access to the TBI file on Baumgartner were stronger than those actually raised. At Petitioner's evidentiary hearing, the post-conviction court accepted testimony and argument on these issues, confirmed that it was knowledgeable on the facts contained in the TBI report and that it agreed that claims of structural error against Baumgartner were available; however, it noted that Petitioner bore the burden to demonstrate some specific error at his trial attributable to Baumgartner's addiction and/or criminal activity. Petitioner failed to meet that burden before the post-conviction court; in fact, the testimony presented at that hearing reflected that Baumgartner was "at his best" during Petitioner's trial. Because Petitioner did not meet his burden of demonstrating that any of Judge Baumgartner's actions – on or off the bench – fundamentally affected the fairness of his trial, the Court finds no reasonable probability that this claim would have been successful on appeal. *See Fowler v. State*, 2014 WL 3362351, at *5-6 (Tenn. Crim. App. July 9, 2014) (affirming denial of post-conviction petition on claim related to Baumgartner's alleged impairment because the petitioner "presented no credible evidence that the trial judge was impaired during the proceedings or that his misconduct outside of the courtroom affected his ability to preside over petitioner's trial"). Thus, even if *Martinez* were expanded to encompass ineffective assistance of post-conviction appellate counsel, Petitioner still would not be entitled to application of the exception in this case.

error": he maintains that a reasonable factfinder could conclude that his trial judge was severely impaired in execution of his duties and that his substance abuse "resulted in him being bias[ed] against the petitioner at his trial." "Structural errors" are those constitutional errors that deprive the defendant of the "basic protections" without which the "criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *Rose v. Clark*, 478 U.S. 570, 577-78 (1986) (citation omitted); *see Arizona v. Fulminante*, 499 U.S. 279, 306 (1991) (noting that structural errors are "defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards"); *Chapman v. California*, 386 U.S. 18 (1967). In collateral proceedings, the question is "whether the [structural] errors alleged . . . could have rendered [the] trial fundamentally unfair." *McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985) (quoting *Buckelew v. United States*, 575 F.2d 515, 518 (5th Cir. 1978)). Although structural errors necessitate automatic reversal, they are found in "a very limited class of cases." *Neder v. United States*, 527 U.S. 1, 8 (1999).

Trial judge bias, under certain circumstances, may constitute structural error. *Id*; *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (noting that the Due Process Clause of the Fourteenth Amendment requires "a fair trial in a fair tribunal . . . before a judge with no actual bias against the defendant or interest in the outcome of his particular case.") (internal quotation marks omitted); *Tanner v. United States*, 483 U.S. 107, 126 (1987) (recognizing that criminal defendants have a constitutional right to "a tribunal both impartial and mentally competent to afford a hearing"). "To violate a defendant's right to a fair trial, 'a trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree.'" *McBee*, 763 F.2d at 818 (quoting *Daye v. Att'y Gen. of N.Y.*, 712 F.2d 1566, 1572 (2d Cir. 1983)).

The record is bereft of any indication that Baumgartner's issues with addiction or illegal conduct had any impact on Petitioner's trial, let alone a substantial adverse impact. As correctly noted by the state court, Petitioner failed to present evidence as to any abnormalities with regard to Baumgartner's demeanor, behaviors, or legal rulings during the course of Petitioner's trial that would indicate significant impairment by the trial judge. Quite to the contrary, the testimony presented by trial counsel suggested that Baumgartner was "at his best" during Petitioner's trial. Because there is no indication that the personal conduct of Petitioner's trial judge affected his professional conduct in presiding over Petitioner's trial, there is no basis from which the Court can conclude that Petitioner's trial was "fundamentally unfair," and by extension, that Petitioner will suffer a fundamental miscarriage of justice as a result of the exclusion of this procedurally defaulted claim. Accordingly, this claim for relief is **DENIED**.

## IV.    CERTIFICATE OF APPEALABILITY

The Court must consider whether to issue a certificate of appealability ("COA") should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial

showing of the denial of a constitutional right.  *See Miller-El*, 537 U.S. at 327, 336; *Slack*, 529 U.S. at 484.

After reviewing each of Petitioner's claims, the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right as to any claims.  First, as to the procedurally defaulted claims, jurists of reason would not debate the Court's finding that the claims are procedurally defaulted.  Further, in view of the law upon which the dismissal on the merits of the adjudicated claims is based, reasonable jurists could not disagree with the correctness of the Court's resolution of these claims.  Because the Court's assessment of Petitioner's claims could not be debatable by reasonable jurists, such claims are inadequate to deserve further encouragement, and the Court will **DENY** issuance of a COA.  *See* 28 U.S.C. § 2253; Fed. R. App. P. 22(b); *Miller-El*, 537 U.S. at 327.

V.      **CONCLUSION**

For the foregoing reasons:

- Petitioner's Motion for reconsideration [Doc. 40] is **DENIED**;

- Petitioner's Motions to amend and/or supplement his § 2254 petition [Docs. 38, 44, 45] are **DENIED**;

- Petitioner's § 2254 Petition [Doc. 1] is **DENIED**;

- Petitioner's Motion for leave to argue for a certificate of appealability [Doc. 46] is **DENIED;**

- This action is hereby **DISMISSED**.

**IT IS SO ORDERED**.

      **E N T E R :**

_____
**UNITED STATES DISTRICT JUDGE**

30